# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 3, 2017       Decided December 22, 2017

No. 16-5379

DANA-FARBER CANCER INSTITUTE,
APPELLEE

v.

ERIC D. HARGAN, ACTING SECRETARY, UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01269)

———

*Carleen M. Zubrzycki*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Michael S. Raab*, Attorney, *Janice L. Hoffman*, Associate General Counsel, U.S. Department of Health & Human Services, and *Susan Maxson Lyons*, Deputy Associate General Counsel for Litigation. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Douglas H. Hallward-Driemeier* argued the cause for appellee. With him on the brief was *Deborah K. Gardner*.

Before: ROGERS, KAVANAUGH, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The issue on appeal concerns Medicare reimbursement owed to the Dana-Farber Cancer Institute, Inc. for a tax that it paid monthly to the Commonwealth of Massachusetts, the receipts of which Massachusetts used to compensate Dana-Farber for services provided to uninsured, low-income individuals. The Provider Reimbursement Review Board in the U.S. Department of Health and Human Services determined that by statute and regulation Dana-Farber was entitled to reimbursement only for the net of Medicare's share of the tax and compensation Dana-Farber received from Massachusetts. Dana-Farber appealed, and the district court granted it partial summary judgment, agreeing that Dana-Farber was entitled to full reimbursement of Medicare's share of the tax paid and vacating the Board's decision. The Secretary of Health and Human Services appeals, and for the following reasons, we reverse.

## I.

Medicare is a federal insurance program that compensates hospitals for certain healthcare services provided to eligible patients. 42 U.S.C. § 1395 *et seq*. Eligible patients must be at least 65 years of age or suffering from disabilities. *Id.* § 1395c. The Secretary is authorized to award Medicare compensation only for "reasonable costs," *id.* § 1395f(*l*), which Congress has determined is the "cost actually incurred," *id.* § 1395x(v)(1)(A). The Secretary is also to establish methods for determining "reasonable costs" so "the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered,

and the costs with respect to individuals not so covered will not be borne by [Medicare.]" *Id.* The Secretary, acting through the Centers for Medicare and Medicaid Services ("CMS"), 42 U.S.C. § 1395b-9(a)(1), (3), has by regulation defined "reasonable costs" as "all necessary and proper costs incurred in furnishing the [Medicare] services," 42 C.F.R. § 413.9(a). "All discounts, allowances, and refunds of expenses are reductions in the cost of goods or services purchased and are not income." *Id.* § 413.98(c). Thus, "refunds of previous expense payments are clearly reductions in costs and must be reflected in the determination of allowable costs." *Id.* § 413.98(d)(2).

Since 1985, Massachusetts has levied a tax on acute care hospitals based upon each hospital's share of private-sector care provided. 1985 Mass. Acts 855. CMS approved the tax ("Hospital Tax") as a permissible means for generating revenue to fund Medicaid payments; the tax is uniformly imposed, broadly based, and does not contain a "hold harmless" feature, 42 U.S.C. § 1396b(w)(1)(A)(ii), (iii), (4); 42 C.F.R. § 433.68(b), (f). Revenue from the Hospital Tax is deposited into a trust fund ("Fund"), which is also funded by State appropriations and private insurance companies. The Fund is used to reimburse hospitals for care provided to low-income individuals under Medicaid, as well as to compensate medical care organizations and experimental programs supporting low-income individuals.

In the scheme administered by Massachusetts, acute care hospitals are notified monthly of their estimated Hospital Tax liabilities and Fund payments, if any. A Fund payment is deposited into the hospital's designated bank account. Next, the hospital deposits its estimated tax liability minus the anticipated Fund payment into the same account — a net amount. Finally, Massachusetts collects the entire amount of

money in the hospital's bank account, which is the sum of the deposited Fund payment and tax liability.

The parties agree that the Hospital Tax is an allowable cost under Medicare. From fiscal years 2004 to 2008, Dana-Farber incurred and paid a total of $23,402,239 in Hospital Tax liability. Dana-Farber also received Fund payments during each fiscal year, totaling $9,001,366. Dana-Farber then sought Medicare reimbursement for the full amount of Hospital Tax assessment attributable to Medicare. A Medicare intermediary ruled Dana-Farber was entitled only to the net of the Hospital Tax assessment less the Fund payments received in each fiscal year. For example, in fiscal year 2007 Dana-Farber paid $5,245,830 in Hospital Tax liability and received $2,479,708 in Fund payments, so the intermediary determined Dana-Farber actually incurred only the net of these two amounts, $2,766,122.

Dana-Farber consolidated its challenges to the intermediary's decisions and appealed to the Provider Reimbursement Review Board. *See* 42 U.S.C. § 1395oo; 42 C.F.R. § 405.1845. The Board affirmed the intermediary's decisions, except for a mathematical error not relevant to this appeal. The Board determined that the statutory directive to reimburse providers only for "reasonable cost[s] . . . actually incurred," 42 U.S.C. § 1395x(v)(1)(A), and the implementing regulations, 42 C.F.R. §§ 413.9, 413.98, meant that Dana-Farber was entitled to reimbursement only for the net amount of the Hospital Tax it actually paid. Further, the Board concluded that, under 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 413.9, "the uncompensated care payments *act as a refund to reduce cost* (*i.e.*, the Tax)" and that this interpretation was consistent with 42 C.F.R. § 413.98 and the Provider Reimbursement Manual, pub. 15-1, pt. 1 §§ 800, 804. *Dana Farber Cancer Inst.*, 2014 WL 11127854, at *10 (May 28,

5

2014) (emphasis added). When the Administrator of CMS declined to review the Board's decision, and the Secretary took no action to revise or reverse it, the Board decision became final. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877(b)(2).

Dana-Farber appealed, arguing in the district court that the decision to offset the Fund payments from the gross amount of Dana-Farber's Hospital Tax was arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06. The parties filed cross motions for summary judgment, and the district court partially granted Dana-Farber's motion. The district court reasoned that under a "plain reading" of the regulation, a refund has a "temporal and substantive relationship" such that "the amount paid back must be for a 'previous expense payment' to reduce the 'related expense.'" *Dana-Farber Cancer Inst. v. Burwell*, 216 F. Supp. 3d 49, 58-59 (D.D.C. 2016) (quoting 42 C.F.R. § 413.98(a)). Finding the Fund payments were made to reduce Dana-Farber's costs of providing care to under- and uninsured patients, and not to reduce the expense of the Hospital Tax, the district court vacated the Board's decision. *Id.* at 59-60. The district court also noted the Board's interpretation of the regulation did not account for the circumstance where a hospital's Fund payments exceeded the amount it paid in hospital taxes. *Id.* at 60.

The Secretary appeals, and this court reviews the grant of summary judgment *de novo*, "review[ing] the administrative record directly." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 54 (D.C. Cir. 2015) (internal quotation marks and citation omitted).

**II.**

At issue is the Board's interpretation of two regulations expounding upon the statutory directive to reimburse only

"reasonable cost[s] . . . actually incurred," 42 U.S.C. § 1395x(v)(1)(A). Under 42 C.F.R. § 413.9(b)(1), the "[r]easonable cost of any services must be determined in accordance with regulations establishing the method or methods to be used." Under 42 C.F.R. § 413.98, which prescribes the method for taking into account offsets such as refunds, the stated "[p]rinciple" is: "Discounts and allowances received on purchases of goods or services are reductions of the costs to which they relate. Similarly, refunds of previous expense payments are reductions of the related expense." *Id.* § 413.98(a). The regulation further provides that, under the "[n]ormal accounting treatment," refunds "are reductions in the cost of goods or services purchased and are not income." *Id.* § 413.98(c). Thus, under the plain terms of the regulation, refunds "must be reflected in the determination of allowable costs." *Id.* § 413.98(d)(2). The Manual similarly instructs that discounts, allowances, and refunds "are reductions of the cost" or "related expense," Manual § 800, explaining that "[t]he true cost of goods and services is the net amount actually paid for the goods or services," *id.* § 804.

Because Dana-Farber does not maintain that the regulations are contrary to the statute, the question for the court is whether the Board's interpretation of the regulations was reasonable. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506, 512 (1994). The court may only "hold unlawful and set aside agency action," 5 U.S.C. § 706(2), that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A). In addressing that question, a court must accord substantial deference to an agency's interpretation of its own regulations, particularly where the regulations involve "a complex and highly technical regulatory program," such as Medicare. *Thomas Jefferson*, 512 U.S. at 512 (internal quotation marks and citation omitted). Regardless of whether a court determines a different

interpretation "best serves the regulatory purpose," the court is to give the agency's interpretation "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Id.* (quoting *Udall v. Tallman*, 380 U.S. 1, 16-17 (1965)). We find no such error or inconsistency.

**A.**

The Board determined that its interpretation is "consistent with the principles for accounting of refunds described in 42 C.F.R. § 413.98 and [the Manual] §§ 800 and 804." *Dana Farber*, 2014 WL 11127854, at *10. On appeal, the Secretary contends "the Board properly concluded[] those principles preclude providers from receiving Medicare reimbursement for the costs of Hospital Tax payments to the extent that the hospitals received payments funded by the proceeds from that very tax, effectively reducing the net economic impact of the assessed tax." Appellant's Br. 14. Regardless of whether the payments constitute refunds or function analogous to refunds, we conclude this interpretation was reasonable. Because the tax is imposed to generate revenue for the Fund payments, the tax and payments were, as the Board concluded, "inextricably linked," *Dana Farber*, 2014 WL 11127854, at *10, and thus they were related as required by 42 C.F.R. § 413.98(a).

The relatedness of the tax and Fund payment is clear from the manner in which Massachusetts administered the Hospital Tax, seeking only a net payment from Dana-Farber. In its decision, the Board provided the following example of Massachusetts's administration of the Hospital Tax and Fund payments:

> [I]f a provider is notified in advance for a particular month that its Tax liability will be $20 and the uncompensated care payment will be $5, then that provider need only deposit $15 into its designated

account to cover the tax liability because the $5 payment for uncompensated care will be deposited into that account prior to it being swept for the Tax liability. Thus, through these mechanics, the actual cost incurred by the Provider in this scenario is the net amount due to the [Fund].

*Dana Farber*, 2014 WL 11127854, at *10. The example shows that the Fund payment of $5 reduced the cost of the provider's tax liability. *See* 42 C.F.R. § 413.98(c). Following the regulatory requirement that refunds be "reflected" in the allowable costs, *id.* § 413.98(d)(2), the Board took the Fund payment into account when calculating the allowable cost. Thus, as administered by Massachusetts, Dana-Farber's "actually incurred" cost is the amount of tax it deposits into the Fund, rather than its nominal liability without reference to the Fund payment it receives. This analysis also comports with 42 C.F.R. § 413.9(c)(3)'s direction that a provider is "reimbursed [for] the actual costs of providing quality care," because in the example, the provider actually paid $15, and the Board found this cost allowable. The example was thus consistent with the relevant regulations, and Dana-Farber has not distinguished what happened in its case from this example.

Dana-Farber nonetheless offers a different interpretation, maintaining that the denial of full compensation for Medicare's share of the Hospital Tax violated statutory and regulatory requirements as well as APA procedural requirements, and it was arbitrary and capricious.

First, Dana-Farber maintains that it actually incurred the full amount of the Hospital tax because the Fund payments were neither refunds nor analogous to refunds. Appellee's Br. 40. It interprets 42 C.F.R. § 413.98 as providing that "only specifically enumerated categories — discounts, allowances,

and refunds, all of which [have] . . . the very purpose of making a provider whole for some or all of the original cost — are considered reductions of that original cost." Appellee's Br. 38. Additionally, Dana-Farber insists that an offset must have a "close substantive connection" with the cost. *Id.* at 37.

Dana-Farber, much as the district court, overreads the regulation, which defines refunds as "amounts paid back or a credit allowed on account of an overcollection." 42 C.F.R. § 413.98(b)(3). Nowhere in this definition does the agency require the refund to have the specific purpose to reduce the tax or substantive connection that Dana-Farber advances. *See id.* § 413.98. And even if Dana-Farber's interpretation were plausible, the regulatory text does not require that the regulation be interpreted as Dana-Farber suggests. The Board's interpretation need not be "the only possible interpretation." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009). The Board reasonably focused on "the guiding principle [of] . . . the statutory and regulatory language, which instructs that reimbursement is allowed only for costs actually incurred." Appellant's Br. 15 (quoting *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 550 (7th Cir. 2012) (internal quotation marks omitted)).

Second, Dana-Farber maintains that the Board's decision violates the statutory and regulatory requirement, 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. 413.9(b)(1), that Medicare costs cannot be passed off onto non-Medicare entities. Dana-Farber points out that the Hospital Tax and Fund payments are calculated based upon independent factors — private sector care and care provided to low-income individuals, respectively. So, Dana-Farber concludes, Fund payments cannot "simultaneously represent" compensation for services to low-income patients and compensation for Medicare costs incurred under the Hospital Tax. Appellee's Br. 33. By considering the

Fund payments to be refunds of the tax liability, Dana-Farber maintains, the Board is essentially denying Dana-Farber its reimbursement for care to low-income patients.

The Board did not shift Medicare costs onto non-Medicare entities. The Board acknowledged the separate purposes of the Hospital Tax and Fund, noting the latter is "set up solely to pay for uncompensated care," and explained that, nonetheless, under "[t]he methodology utilized by" Massachusetts, the Fund payments reduce the amount of tax Dana-Farber must deposit in its bank account. *Dana Farber*, 2014 WL 11127854, at \*10. Dana-Farber minimizes the implications of Massachusetts's methodology by referring to it as one of "administrative convenience." Appellee's Br. 26. But the fact remains that Massachusetts has chosen to structure its compensation for low-income care in a manner that this compensation serves to reduce the Hospital Tax liability owed. *See* 42 U.S.C. § 1396a(a)(13)(A)(iv).

**B.**

Dana-Farber's remaining objections that the Board's decision failed to adhere to notice-and-comment requirements and was, in any event, arbitrary and capricious are unpersuasive. The APA includes notice-and-comment procedures requiring that "[g]eneral notice of proposed rule making shall be published in the Federal Register," 5 U.S.C. § 553(b), and "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation," *id.* § 553(c). Dana-Farber objects that the "inextricably linked" standard upon which the Board relied violates these notice-and-comment requirements because this standard is not contained in the refund regulation and therefore constitutes a substantive new

legal standard that should have been subject to notice and comment.

As an initial matter, it is doubtful the "inextricably linked" phrase constitutes a new rule or policy. Nowhere did the Board's decision state a payment must be inextricably linked to a cost in order to constitute a refund. Instead, the Board reasoned that because it found that the payments and tax were inextricably linked and that the payments reduced the cost of Dana-Farber's tax liability, the payments "act as a refund to reduce cost[s] (*i.e.*, the Tax) under 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 413.9." *Dana Farber*, 2014 WL 11127854, at *10. This interpretation is consistent with the regulatory requirements that refunds must be related to and reduce an expense. 42 C.F.R. § 413.98(a), (d).

But even assuming a new "inextricably linked" standard was announced, APA notice and comment was not required. An agency "has the option of choosing whether to establish new policies through notice-and-comment rulemaking or adjudication," *Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 219 (D.C. Cir. 2017), and here Dana-Farber's challenges were addressed by adjudication. *See also Nat'l Biodiesel Bd. v. EPA*, 843 F.3d 1010, 1017 (D.C. Cir. 2016). Dana-Farber's reliance on *Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014), is misplaced. In that case, the Department of Labor issued two letters providing special procedures, *id.* at 1008, that the court concluded "substantively affect[ed] the regulated public" and thus were substantive rules subject to notice-and-comment requirements, *id.* at 1024 (internal quotation marks and citation omitted) (alteration in original). That case did not involve an adjudication. Neither did the court hold, as Dana-Farber suggests, that substantive rules announced in adjudications must undergo notice and comment. Because, even assuming the "inextricably linked" phrase constitutes a new standard, the

agency exercised its discretion to announce the standard through an adjudication, Dana-Farber's procedural objection fails.

## C.

To determine whether the Board's decision was arbitrary or capricious, the court must

> consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Normally, an agency [decision] would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citations omitted). Dana-Farber suggests that the decision was arbitrary and capricious for three reasons. None has merit.

**1.** Dana-Farber views the decision as inconsistent with CMS's August 16, 2010 Medicare Program Rule, 75 Fed. Reg. 50,042 ("Offset Guidance"). The Offset Guidance was issued, in part, to "clarify [CMS's] policy concerning when provider taxes may be considered allowable costs under Medicare." *Id.* at 50,363. The Guidance became effective October 1, 2010, *id.* at 50,042, after the years at issue here. Even assuming the Offset Guidance applies, Dana-Farber's challenge fails.

The Guidance states, in relevant part, that when States tax hospitals and then pay hospitals from funds generated from that tax,

> the treatment of these types of payments on the Medicare cost report should be analogous to the adjustments described at § 413.98 of the regulations. . . .  In situations in which payments that are associated with the assessed tax are made to providers *specifically* to make the provider whole or partly whole for the tax expenses, Medicare should similarly recognize only the net expense incurred by the provider.  Thus, while a tax may be an allowable Medicare cost in that it is related to beneficiary care, the provider may only treat as a reasonable cost the net expense; that is, the tax paid by the provider, reduced by payments the provider *received* that are associated with the assessed tax.

*Id.* at 50,363 (first emphasis added).

Dana-Farber reads the word "specifically" to mean that "*only* associated payments that have a specific substantive link to the tax can properly be considered refunds."  Appellee's Br. 39.  This reading ignores the plain text of the Offset Guidance, which lists such situations as an example of when a payment constitutes an offset, but nowhere states that these are the only situations where a payment is considered an offset of a tax.  The Guidance follows this specific example with the more general principle that when a tax is "reduced by payments the provider *received* that are associated with the assessed tax," those payments are offsets.  75 Fed. Reg. 50,363.  *See Breckinridge Health, Inc. v. Burwell*, 193 F. Supp. 3d 788, 796 (W.D. Ky. 2016), *aff'd sub nom. Breckinridge Health, Inc. v. Price*, 869

F.3d 422 (6th Cir. 2017). Dana-Farber reads into the Offset Guidance a requirement that does not exist.

In any event, the Board's decision was consistent with the Offset Guidance. The Board determined that the Fund payments were "analogous to the adjustments" in 42 C.F.R. § 413.98 in that they "act as a refund" by reducing the Tax payments Dana-Farber owed. *Dana-Farber*, 2014 WL 11127854, at *10. Thus, in accordance with the Offset Guidance, the Board concluded Dana-Farber had incurred the reasonable cost of the net expense of the Tax payments less the Fund payments.

**2.** Dana-Farber suggests that the Board's interpretation of the refund regulation will produce absurd results. Its position rests on hypotheticals involving other hospitals, including a scenario where Hospital A pays $40,000 in tax but receives no Fund payments, rendering the entire tax payment a reimbursable cost. Dana-Farber poses a hypothetical where Hospital A merges with Hospital B, which paid no tax but received $40,000 in Fund payments, and speculates that Hospital A cannot claim any portion of the $40,000 tax as a reimbursable cost, an arbitrary result. Appellee's Br. 48-49.

The Board's decision does not bear on the Medicare reimbursement owed to a hospital that merges with another hospital. Thus, "the hypothetical problem posed by [Dana-Farber] is inapposite." *R.I. Hosp. v. Leavitt*, 548 F.3d 29, 37 (1st Cir. 2008). As to Dana-Farber's hypothetical in which a hospital receives a greater Fund payment than the tax liability it incurred, Appellee's Br. 49, the Fund payment would still reduce the cost of the tax liability incurred. And to the extent Dana-Farber posits hypotheticals in which the incurred cost has a purpose unrelated to low-income care, such as a payroll tax, *id.* at 42-43, this simply reprises Dana-Farber's flawed position

that Fund payments cannot represent both compensation for low-income care and refunds of the Hospital Tax. *See* discussion § II(A) at 9-10.

**3.** Dana-Farber also maintains that the Board's decision is inconsistent with CMS's approval of the Hospital Tax under Medicaid. In order for a tax to be permissible under Medicaid, it may not contain a hold harmless feature. 42 U.S.C. § 1396b(w)(1)(A)(iii); 42 C.F.R. § 433.68(b)(3). If a state "provides (directly or indirectly) for any payment, offset, or waiver that guarantees to hold taxpayers harmless for any portion of the costs of the tax," then the tax has a hold harmless feature. 42 U.S.C. § 1396b(w)(4)(C)(i). Dana-Farber suggests that by treating the Fund payments as a refund of the Hospital Tax, the Board's decision effectively treats the Tax as having a "hold harmless" feature for hospitals that receive Fund payments. Dana-Farber relies on *Greater Boston Television Corp. v. F.C.C.*, 444 F.2d 841, 852 (D.C. Cir. 1970).

Although "an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed," *id.*, Dana-Farber has not shown that the Board's decision involved a change in agency analysis of or policy involving the Tax. The Board did not revoke or otherwise change the determination that the Hospital Tax remains a permissible tax — and thus does not contain a hold harmless feature — under Medicaid. Moreover, to the extent that the decision may appear to be in tension with the approval of the tax under Medicaid, and the court has no occasion to decide whether it is, Dana-Farber has pointed to no authority stating that an agency must interpret two different statutory phrases — "reasonable cost" and "hold harmless" — in two different statutory frameworks — Medicare and Medicaid — in the same manner. To the contrary, the court has held that it is "not impermissible . . . for an agency to

interpret [a] term differently in two separate sections of a statute which have different purposes," *Verizon Cal., Inc. v. F.C.C.*, 555 F.3d 270, 276 (D.C. Cir. 2009) (internal quotation marks and citation omitted), and so it certainly may be permissible to interpret two separate terms differently. Nor has Dana-Farber shown that interpretations under Medicaid control analysis under Medicare. *See Abraham Lincoln*, 698 F.3d at 553. "[B]ecause Medicare and Medicaid are two separate and independent programs, we cannot conclude that CMS's decisions under Medicaid necessarily control [its] decisions under Medicare, such that the [Board's] [d]ecision at issue here was arbitrary, capricious or contrary to law." *Id.* at 554.

Accordingly, because the Board's interpretation is reasonable and Dana-Farber fails to show otherwise — much less that the interpretation violates the APA — the court appropriately defers to it, and we reverse the grant of partial summary judgment to Dana-Farber.